700 So.2d 1306 (1997)
Perry WALLER
v.
AMERICAN SEAFOODS COMPANY, ABC Insurance Company, Trinity Industries, Inc., XYZ Insurance Company.
No. 97-CA-0302.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*1307 H. Edward Sherman, Travis J. Causey, Jr., New Orleans, for Plaintiff-Appellant Perry Waller.
Andre C. Gaudin, Best Koeppel, New Orleans, for Defendant-Appellee Trinity Industries, Inc.
Before BARRY, WALTZER and LANDRIEU, JJ.
WALTZER Judge.
Perry Waller brought this action against his employer, Trinity Industries, Inc., (Trinity) under the Jones Act to recover damages arising from injuries he sustained in the course of his employment while he was aboard the M/V American Champion during a twenty day voyage from New Orleans to Seattle. Waller appeals from the Civil District Court's summary judgment dismissing Waller's claim of seaman status. The Civil District Court, in its oral reasons for judgment, found that the twenty day voyage that Waller was on was not a significantly long voyage, and held that the law clearly determined that there was not sufficient attachment to the sea to warrant Waller being found a seaman.

STANDARD OF REVIEW
Appellate courts must review summary judgments de novo. Act No. 483 of 1997 amended La.C.C.Pro. art. 966 effective August 15, 1997, and it is to be applied retroactively as well as prospectively. Kaufmann v. Fleet Tire Service of Louisiana, Inc., 96-2444 (La.App. 4 Cir. 4/2/97), 691 So.2d 811, vacated, 97-1428 (La.9/5/97), 699 So.2d 75 (applying Act 483 of 1997, effective 8/15/97, to judgment rendered prior to the effective date of the Act).
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.Pro. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.Pro. art. 966 B. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. La.C.C.Pro. art. 966 C(2).
The question of seaman status is a mixed question of law and fact. Chandris, Inc. v. Latsis, 515 U.S. 347, 369, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995). Interpretation of statutory terms is a question of law. Id. If reasonable persons applying the *1308 proper legal standard could differ as to whether the employee was a member of the crew, status becomes a question for the jury. Id. Only where the undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to the vessel, may the court take the question from the jury by granting summary judgment. Chandris, supra, 515 U.S. at 371, 115 S.Ct. at 2191.
SPECIFICATIONS OF ERROR: Whether the trial Court legally erred in concluding that Waller was not a seaman, and whether the trial court properly granted summary judgment dismissing Waller's seaman's claim.
The Jones Act provides an action for damages at law with the right to a trial by jury for any seaman who suffers personal injury in the course of his employment. 46 U.S.C.App. § 688(a). The Jones Act does not define the term "seaman" and allows the courts to distinguish between a maritime worker who is a seaman under the Jones Act, and a maritime worker covered by the Longshore and Harbor Workers' Compensation Act (LHWCA).
There are two essential requirements for seaman status. First, the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. Second, a seaman must have an employment related connection to a vessel in navigation. McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991). It is not the employee's particular job that is determinative, but the employee's connection to a vessel. Wilander, supra, 498 U.S. at 354, 111 S.Ct. at 817.
Seaman status is not merely a temporal concept, but it necessarily contains a temporal element. Chandris, supra, 515 U.S. at 371, 115 S.Ct. at 2191. The employment-related connection to the vessel must be substantial in terms of both its nature and duration. Chandris, supra, 515 U.S. at 368, 115 S.Ct. at 2190. The Jones Act remedy is reserved for sea based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected. Chandris, supra, 515 U.S. at 370, 115 S.Ct. at 2190. This modification was made to prevent a maritime worker from walking into and out of coverage in the course of his regular duties. Chandris, supra, 515 U.S. at 363, 115 S.Ct. at 2187. The Court held that the ultimate inquiry is whether the worker in question was a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. Chandris, supra, 515 U.S. at 370, 115 S.Ct. at 2191.
In the ordinary case, where a maritime worker divides his time between land (or the platform) and the vessel, the assessment of the substantiality of the employment-related connection is determined by weighing the total circumstances of an individual's employment. Chandris, supra, 515 U.S. at 371, 115 S.Ct. at 2191. The "rule of thumb" for this inquiry is that a worker who spends less than about 30% of his time in the service of a vessel in navigation should not qualify as a seaman. Id. However, this figure serves as no more than a guideline and departure from it will certainly be justified in appropriate cases. The Court reaffirmed that the inquiry into seaman status is of necessity fact specific and will depend upon the nature of the vessel and the employee's precise relation to it. Id.
A maritime employee who receives a new work assignment in which his essential duties are changed to a classic seaman's job may achieve seaman status. Chandris, supra, 515 U.S. at 372, 115 S.Ct. at 2192. An assignment to work as a crew member, like the voyage of a vessel, may be brief. In such a case the Court will apply the test of Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir.1959). There is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission.
*1309 A maritime worker should not be denied seaman status, if, after working in an employer's shoreside headquarters for years, he is injured shortly after being reassigned to a classic seaman's job which involves a regular and continuous, rather than intermittent, commitment to the function of the vessel. Chandris, supra, 515 U.S. at 372, 115 S.Ct. at 2191.
The inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea and prior work history with the employer may not affect the status inquiry if the injury occurred on an assignment with different essential duties than his previous assignment. Harbor Tug and Barge Co. v. Papai, ___ U.S. ___, ___, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997).
The trial court in its oral reasons for judgment found that the twenty day voyage that Waller was on was not a significantly long voyage and held that the law clearly determined that there was not sufficient attachment to the sea to warrant Waller being found a seaman.
A determination of whether genuine issues of material fact exist necessitates a more extensive evaluation of Waller's duties while working for Trinity, and his connection to the vessel. Cappiello v. Exxon Corporation, 96-2418, p. 2-3 (La.App. 4 Cir. 5/28/97), 695 So.2d 1097, 1099. Waller testified on deposition that he had worked as a shore-based pipefitter for approximately two years when Trinity requested volunteers to work aboard the M/V American Champion during the delivery voyage to Seattle. Waller understood that he would help complete construction of the vessel during the cruise. Trinity states that this construction had to be completed during the voyage in order to meet contract deadlines for delivery of the vessel to her owners in Seattle. Waller testified that while on board the vessel, he did not perform his regular duties as a pipefitter, and the parties agree that he was to return to his shore based duties on reaching Seattle. During the voyage, under the direction of both Trinity's foreman, Haroun Kahn, and the vessel's chief engineer, Waller cleaned and painted various parts of the vessel, including the engine room and the bilges, and stowed supplies. Mr. Kahn's deposition testimony confirms Waller's testimony. According to Mr. Kahn's notes of the voyage, the vessel's chief engineer utilized Waller's labor for six days of the voyage to stow all the spare parts for the engine.
Waller alleges that he was injured during the twenty day voyage from New Orleans to Seattle when the vessel lost power, causing the vessel to toss, roll and pitch. As a result of this unexpected motion, Waller alleges he was thrown from his bed against a bulkhead.
Once the vessel arrived in Seattle, Waller was lodged in a motel and Mr. Kahn, who held Waller's return airline ticket, requested that Waller remain for an extra week to perform land based duties as a pipefitter.
We find that Trinity's pleadings and depositions do not resolve all material factual issues and that genuine issues of material fact exist as to Waller's seaman status: were his seaman's duties substantial; did he receive a new assignment when he boarded the vessel bound for Seattle; was his connection to the vessel during the voyage transitory; was his service regular and continuous, substantial in duration rather than intermittent.
The federal Fifth Circuit has never defined permanent assignment, but has consistently emphasized that this requirement should not be given wooden application, but rather, should be used as an analytical starting point rather than a self-executing formula. Davis v. Hill Engineering, Inc., 549 F.2d 314, 327 (5th Cir.1977), overruled on other grounds by, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir.1997).
A plaintiff under similar facts was held to be permanently assigned to the vessel within the meaning of the Robison test. Davis, supra, 549 F.2d at 328. The Chandris Court adopted the Robison test to determine the status of an employee during a brief assignment change. We find that reasonable minds could differ as to whether Waller was a seaman based solely on his vessel-related duties. Accordingly, we hold that the trial court erred in finding that Waller was not a seaman as a matter of law.

*1310 CONCLUSION

A genuine issue of material fact exists as to Waller's status as a seaman. Accordingly, we REVERSE the trial court's summary judgment in favor of Trinity and REMAND for further proceedings in the trial court.
REVERSED AND REMANDED.